**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
Alan R. Plutzik (State Bar No. 77785)
aplutzik@bramsonplutzik.com
2125 Oak Grove Road, Suite 125
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman*
edr@wittelslaw.com
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (917) 775-8862
Facsimile: (917) 775-8862

* *Admitted pro hac vice*

[NAMES AND ADDRESSES OF ADDITIONAL
COUNSEL APPEAR ON SIGNATURE PAGE]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE CHABOLLA,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CLASSPASS INC., CLASSPASS, LLC, and<br>CLASSPASS USA LLC<br>Defendants. | Civil Case No. 23 Civ. 429 (YGR)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Katherine Chabolla ("Plaintiff"), by her undersigned attorneys, Bramson, Plutzik, Mahler & Birkhaeuser, LLP, and Wittels McInturff Palikovic, brings this consumer protection action in her individual capacity and on behalf of a class of consumers defined below against Defendants ClassPass Inc., ClassPass, LLC, and ClassPass USA LLC (together "ClassPass" or "Defendant," unless otherwise specified), and hereby alleges the following, with knowledge as to her own acts and upon information and belief as to all other matters alleged:

## INTRODUCTION

1.      This is a proposed class action lawsuit against fitness marketplace ClassPass for engaging in illegal "automatic renewal" practices with respect to its subscription plans.  To protect Californians from deceptive autorenewal practices, California enacted its Automatic Renewal Law, BUS. & PROF. CODE §§ 17600–06 (the "ARL").     The ARL requires companies that offer automatically renewing purchases to provide "clear and conspicuous" disclosures about the autorenewal plan, obtain consumers' "affirmative consent" to autorenewal, and provide a "cost-effective, timely, and easy-to-use mechanism" for cancelling the subscription.

2.      ClassPass is one of the nation's biggest health club aggregators, with over 30,000 partner studios worldwide.[1]  In exchange for subscription fees, ClassPass allows consumers to access fitness classes at partner studios across a spectrum of activities.  Although ClassPass's revenue plummeted by as much as 95% during the first year of COVID-19 pandemic, by the fall of 2021 the company's CEO claimed that "pent-up demand for in-person fitness classes" had brought ClassPass back to pre-pandemic numbers.[2]  At that time ClassPass was valued at over $1 billion.[3]

---

[1] Sara Ashley O'Brien, CNN, *Fitness startup ClassPass is now a unicorn*, Jan. 8, 2020, https://www.cnn.com/2020/01/08/tech/classpass-valuation-unicorn/index.html (last visited Jan. 30, 2023).
[2] Abigail Gentrup, FRONT OFFICE SPORTS, *Mindbody Acquires ClassPass, Raises $500M*, Oct. 14, 2021, https://frontofficesports.com/mindbody-acquires-classpass-raises-500m/ (last visited Jan. 30, 2023).
[3] Jordan Crook, TECHCRUNCH, *Mindbody acquires ClassPass in all-stock deal and secures $500 million investment*, Oct. 13, 2021, https://techcrunch.com/2021/10/13/mindbody-acquires-classpass-in-all-stock-deal-and-secures-500-million-investment/ (last visited Jan. 30, 2023).

**FIRST AMENDED CLASS ACTION COMPLAINT**                                    **1**

3.      Yet much of ClassPass's revenue comes from its aggressive and deceptive marketing of free or low-cost trial periods that then convert into automatically renewing monthly subscriptions and saddle unsuspecting consumers with hundreds of dollars in unauthorized charges.  To make matters worse, at the beginning the COVID-19 lockdowns ClassPass "paused" consumers' subscriptions and refrained from collecting monthly membership fees while in-person fitness and recreational activities were discouraged.  But when in-person activities began resuming and ClassPass's partner studios began reopening more than a year later, ClassPass quietly "unpaused" consumers' subscriptions and used the credit card and other payment information it had previously collected from consumers to begin extracting unauthorized subscription fees.  Additionally, ClassPass made it difficult for consumers to cancel their unwanted subscriptions and stop the accompanying unauthorized charges.  ClassPass's cancellation process violates the ARL because it is not cost-effective, timely, and easy-to-use.  Instead, consumers are required to navigate a multi-step, confusing process that obstructs and delays consumers' ability to turn off recurring billing.  Further, the ARL mandates that online sellers provide one of two online cancellation methods described in the statute.  ClassPass offers neither.

4.      Yet that is not all.  ClassPass's initial enrollment process is deceptive and further violates the ARL.  The enrollment process fails to make the ARL-mandated clear and conspicuous disclosures regarding ClassPass's automatic renewal terms, does not obtain consumers' affirmative consent to automatic renewal, and overshadows any (insufficient) automatic renewal disclosures with prominent misleading and deceptive features that grab consumers' attention.

5.      Under the ARL ClassPass is also required to send consumers an acknowledgement that includes the cancellation policy and explains how to cancel the recurring charges.  ClassPass's acknowledgement email following enrollment fails these requirements as well.  Specifically, the email fails to disclose that consumers must cancel the trial by 12:00 PM Eastern (9:00 AM Pacific) on the day *before* the last day of the trial and fails explain how to cancel.

6.      Only through a class action can consumers remedy ClassPass's unlawful practices.  Because the monetary damages suffered by each customer are small compared to the much higher

---

cost a single customer would incur in trying to challenge ClassPass's improper conduct, it makes no financial sense for an individual customer to bring his or her own lawsuit. Furthermore, many customers do not realize they are victims of ClassPass's unlawful acts and continue to be charged to this day. With this class action, Plaintiff and the Class seek to level the playing field, enjoin ClassPass's unfair business practices, and recover the charges ClassPass has imposed on Plaintiff and the Class in violation of the law.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

8.      This Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

9.      This Court has personal jurisdiction over Defendant under 18 U.S.C. § 1965. The Court also has personal jurisdiction over Defendant because ClassPass has sufficient contacts in this jurisdiction.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct occurred within this District, as ClassPass does business in this District, maintains an office in this District, and Plaintiff resided in this District when she became a ClassPass customer and when ClassPass "unpaused" her account.

## PARTIES

11.     Plaintiff Katherine Chabolla is a citizen of Colorado and lives in Boulder, Colorado. When Plaintiff enrolled in ClassPass, she was a citizen of California and lived in San Francisco, California until July 2021. She became a customer of ClassPass in January 2020 and moved to Boulder in July 2021.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**                                                   3

12.     Plaintiff is a consumer who was victimized by ClassPass's unlawful auto-enrollment practices, suffered injury in fact and lost money because of ClassPass's violations of California's consumer protection statutes and thus has standing to pursue public injunctive and other relief to protect California consumers from ClassPass's continuing violations.

13.     Defendant ClassPass Inc. was a fitness and wellness company whose headquarters was located at 275 7th Ave, New York, NY 10001.  ClassPass did business throughout California, including in this District, and maintained an office in this District located at 33 New Montgomery St., San Francisco, CA 94105.  According to the corrected Certificate of Interested Entities or Persons filed by ClassPass Inc. on March 21, 2023 as ECF No 17, ClassPass Inc. "terminated on March 30, 2022."

14.     Defendant ClassPass, LLC is a Virginia LLC whose headquarters is located at 101 East Front Street, Floor 5, Missoula, Montana 59802.  According to the corrected Certificate of Interested Entities or Persons filed by ClassPass Inc. on March 21, 2023 as ECF No 17, "ClassPass, LLC is ClassPass Inc.'s successor."  Upon information and belief, Defendant ClassPass, LLC later changed its name to ClassPass USA LLC.

15.     Defendant ClassPass USA LLC is a Virginia LLC whose headquarters is located at 101 East Front Street, Floor 5, Missoula, Montana 59802.  According to the corrected Certificate of Interested Entities or Persons filed by ClassPass Inc. on March 21, 2023 as ECF No 17, "ClassPass USA LLC" is a "Virginia Company."  Upon information and belief, Defendant ClassPass USA LLC is responsible in whole or part for the conduct challenged as unlawful in this litigation.

## FACTUAL ALLEGATIONS

### A.  ClassPass's Trial-Period Enrollment Process Violates the ARL

16.     On or around January 30, 2020, Plaintiff visited ClassPass's website to view Defendants' offerings.

17.     Plaintiff chose to enroll in a month-long ClassPass trial, costing $39.00, and began Defendant's enrollment process.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18.     Plaintiff completed the ClassPass trial-period enrollment process and authorized Defendant to charge $39.00 to her credit card for the trial.

19.     Upon information and belief, the payment screen for the trial-period enrollment process Plaintiff used in January 2020 was materially similar to ClassPass's current payment page copied on the next page:

**FIRST AMENDED CLASS ACTION COMPLAINT**                                                                 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



20.     ClassPass's payment page violates the ARL in several respects.

21.     First, the terms and conditions of ClassPass's automatic renewal offer are not presented to consumers in a "clear and conspicuous" manner, as defined in the ARL.  The terms and conditions are not in larger type than the surrounding font, are colored gray rather than a more conspicuous color, and although a portion of the terms are somewhat bolded, the combination of the font size and color do not make even this bolded snippet stand out, let alone the other automatic renewal offer terms on the payment page.  *See* BUS. & PROF. CODE § 17601(c).  Nor are the automatic renewal terms set off by symbols or other marks.  *Id.*

22.     Moreover, any supposed "disclosures" on the ClassPass payment page are far overshadowed by the page's other deceptive components.  The very first text consumers see on the page is the large, bold, black text asking for consumers' payment information merely "**for future reference**" and then further deceptively claiming that this supposed "reference" is in case "you miss or cancel a booking last-minute or purchase add ons."  This language at the very top of ClassPass's payment page does not disclose that the "future reference" is going to be used to extract monthly subscription fees if the consumer fails to navigate ClassPass' cancellation process.  Worse, the top of the page reassures consumers by telling them "Don't worry, during your trial we won't charge you[.]"  The "don't worry" statement is made in darker, larger, and more readable text than the deficient autorenewal disclosures.  ClassPlass's "for future reference' and "don't worry" statements substantially distract from the minimal and inconspicuous "disclosures" regarding ClassPass's automatic renewal offer terms elsewhere on the payment page.

23.     Second, the ClassPass payment screen fails to include a clear and conspicuous disclosure of the cancellation policy that applies to the offer, instead stating only that consumers can "[c]ancel anytime in Settings to avoid renewal."  *See* BUS. & PROF. CODE § 17601(b)(2).  ClassPass' incomplete and inconspicuous disclosure fails to describe the "cancellation policy that applies to the offer" as required by the ARL, including that (i) consumers must actually cancel by 12:00 PM Eastern on the day **before** the last day of the trial to avoid charges, and (ii) that if consumers cancel during their trial, they will lose the credits they paid for, they will not be able to schedule any new

---

**FIRST AMENDED CLASS ACTION COMPLAINT**                                           7

classes, and they will have any upcoming reservations cancelled—even if those classes were scheduled to occur during the trial period.

24.     Third, the ClassPass acceptance page fails to obtain consumers' affirmative consent to the automatic renewal terms.  BUS. & PROF. CODE § 17602(a)(2).  The ClassPass page contains no mechanism for affirmatively consenting to the automatic renewal terms.  For example, there is no checkbox that consumers must click to indicate that they accept those terms.

25.     After Plaintiff enrolled in ClassPass's trial, ClassPass sent Plaintiff an email on January 30, 2022 with the subject line "Your ClassPass membership is now active!"  This email does not meet the requirements the ARL imposes after purchase of an automatically renewing product or service.  BUS. & PROF. CODE § 17602(a)(3).

26.     The relevant portions of the acknowledgement email sent to Plaintiff are shown on the next page:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



27.     The acknowledgement email violates the ARL because it does not include "information regarding how to cancel in a manner that is capable of being retained by the consumer."

**FIRST AMENDED CLASS ACTION COMPLAINT**                                                    9

BUS. & PROF. CODE § 17602(a)(3).  Instead, it merely states that Plaintiff could "cancel at any time" via her account on ClassPass's website.

28.     Moreover, the ClassPass acknowledgement email fails to describe a "cost-effective, timely, and easy-to-use mechanism for cancellation." BUS. & PROF. CODE § 17602(c).

29.     The acknowledgment email also disclosed, for the first time after Plaintiff had already paid, that if Plaintiff canceled her account during the ***paid*** trial, she would lose all credits, *i.e.*, not receive any of the services she paid for.   The email did not, however, advise that consumers must cancel by 12:00 PM Eastern on the day *before* the last day of the trial.

### B. ClassPass's Cancellation Process Violates the ARL

30.     ClassPass's cancellation process is neither timely nor easy-to-use.  BUS. & PROF. CODE § 17602(c).  Furthermore, it requires consumers to engage in further steps that obstruct and/or delay the consumer's ability to terminate the automatic renewal immediately.  BUS. & PROF. CODE § 17602(d)(1).  ClassPass also does not offer either of the cancellation methods required by the ARL for offers of automatic renewal services made online; cancellation is not provided by either a "prominently located direct link or button" in customers' account profile, or an "immediately accessible termination email formatted and provided by [ClassPass] that a consumer can send to [ClassPass] without additional information." BUS. & PROF. CODE § 17602(d)(1)(A)–(B).  Nor does ClassPass offer a toll-free telephone number or email address consumers can contact to cancel.  BUS. & PROF. CODE § 17602(c).

31.     Instead, canceling a ClassPass subscription requires consumers to take multiple, confusing steps that hinder cancellations.  The consumer must first log into their customer account and navigate to their account page.  After this, the remaining steps are misleading, confusing, and violate the ARL.

32.     Once consumers access their account page, there is no "prominently located direct link or button" to cancel.  Instead, consumers must figure out that they need to click on the button labeled "Manage plan," as seen on the next page:



33.     Clicking on the "Manage plan" button brings consumers to a landing page that prominently features options to skip their trial and begin paying full price immediately, or to switch to different ClassPass subscriptions.  These options are all available via bright blue buttons that draw the eye and are nearly impossible to miss.  The cancellation option, conversely, is hidden at the bottom of the page.  The text is tiny and light red, which is much less prominent than the options to continue with a ClassPass subscription, does not draw the eye, and is designed to be overlooked. This page is shown in the screenshot on the next page:

34.     For those consumers who find the hidden cancellation link, they are brought to yet another page—one that does not clearly explain to consumers that further steps are still needed complete cancellation, and instead suggests that the consumer has cancelled by offering a survey that asks "your reasons for changing your membership" as shown on the next page:



35.     For the consumers that understand that cancelling requires them to click on one of the survey options, the cancellation process is still incomplete.   Consumers are instead taken to yet another unclear survey page that does not indicate either way whether the subscription has been canceled.   For example, consumers who click the option reading "ClassPass doesn't work for me" are taken to the following page:



36.     After selecting yet another option, consumers are taken to yet another misleading page, deliberately designed to obstruct cancellation.  This page features a prominent bright blue button that leads consumers to believe it is the correct choice, but that button instead is the option to "Continue with my plan."  The "Cancel my membership" button is de-emphasized and can be easily missed, as shown on the next page:



37.     The cancellation process shown above is not timely, cost-effective, and easy-to-use, and therefore violates the ARL.  BUS. & PROF. CODE § 17602(c).

1

2

### c. ClassPass Violated the ARL When it "Unpaused" Consumers' Accounts During the COVID-19 Pandemic

3

4

5

38.    In March 2020, due to the COVID-19 pandemic, the government mandated that among other businesses, ClassPass partner studios throughout the state of California had to close to the general public.

6

7

8

39.    On March 17, 2020, Plaintiff received an email from ClassPass with the subject line "Membership changes regarding COVID-19," informing her that ClassPass would suspend billing on her subscription sometime in "the next few days."

9

10

11

12

13

40.    On July 1, 2020, Plaintiff received an email from ClassPass with the subject line "Information about your ClassPass account."  This email notified Plaintiff that her account was "currently <u>paused</u>," would "**remain paused**," and ClassPass would "**not resume billing without notifying you ahead of time**." (Emphases in original).  The email further gave consumers the option of resuming their subscriptions by logging into their account and manually reactivating.

14

15

16

41.    Over a year after her account was paused, on May 13, 2021, Plaintiff received an email from ClassPass with the subject line "Important details about your ClassPass membership." This email, shown on the next page, violated the ARL in multiple ways:

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**                                                          16



Businesses near you like Kume Spa – 19th, Baptiste Yoga San Francisco, and Crunch Gym have officially reopened and we're excited to help you get back to your routine. Expect smaller class sizes and increased sanitation measures, but the same great workout and self care you deserve.

Now that local restrictions have lifted and fitness and wellness reservations are available for booking in your area:

Your membership will unpause on **May 20, 2021**, and your **45-credit plan for $79.00/mo.** will resume and begin auto-renewing monthly. Plus, to restart strong, book your first 2 reservations through June 3rd and get 50% off each (up to 10 credits off).*

Some important updates:

🔄 **Updated rollover policy –** Rather than capping rollover to 10 credits/mo., **you can now roll over up to the total number of credits in your upcoming plan.** For example, on your 45-credit plan, you can roll over up to 45 unused credits into your next month. All unused credits in your account currently will roll over into your first paid month. Learn more about how the new rollover policy works here.

😊 **Safety & cleanliness details –** From smaller class sizes to mask policies and ventilation systems, safety details can now be accessed directly from a business's page.

💪 **More ways to use your credits –** Use credits to book in-person or outdoor classes, or for services like massages, facials, manicures and more. You can also book at-home experiences like virtual personal training, nutrition sessions and digital workouts from 5,000+ global partners.

**+ Easily adjust your plan –** Flexibility is key. Add more credits, change your plan or cancel anytime.

You can unpause your account early if you're ready to go or make changes to your upcoming plan. Pauses or plan changes need to be made by **May 19, 2021** to take effect.

Thank you for being a valued member of our ClassPass community. We're here if you have any questions or concerns.

42.     The top of the email contained a flashing graphic featuring a rotating carousel of images (here, in a static screenshot, an image of a man rock-climbing) and the next two paragraphs did not pertain to ClassPass subscriptions at all.  It was not until the email's third paragraph that ClassPass mentions that the automatically renewing subscription would "unpause" after a 1+ year hiatus and ClassPass would "begin auto-renewing monthly" in just one week, on May 20, 2021.

43.     Unilaterally restarting an automatically renewing subscription after over a year of no payments without requiring any action by the consumer whatsoever is a "material change in the terms of the automatic renewal," under the ARL which requires "clear and conspicuous notice of the material change" and the furnishing of "information regarding how to cancel in a manner that is capable of being retained by the consumer."  BUS. & PROF. CODE § 17602(e).

44.     By burying the "unpause" language in the May 13, 2021 email, ClassPass did not provide "clear and conspicuous notice" about Defendant's resuming charges after a year-plus hiatus.

45.     Moreover, ClassPass can access detailed information about consumers' response to mass emails like its "unpause" email.  This information includes the number of emails sent that are opened by consumers, as well as whether any given consumer opened an email.  In the aggregate, the open rate can be used to determine whether bulk email campaigns like the "unpause" email are generally received and read by consumers, are received but not read, or whether such emails are overwhelmingly caught by spam or promotions filters that inhibit delivery.  Upon information and belief, ClassPass had access to such data (and potentially more sophisticated data) regarding the results of its "unpause" email that could shed light on whether consumers received, read, or understood the true import of ClassPass's "unpause" email.

46.     The "unpause" email also did not provide any information on how to cancel other than saying consumers could "cancel anytime."

47.     The "unpause" email further stated that consumers could unpause their account early or "make changes to your upcoming plan," and ClassPass required any changes to be made by May 19, 2021.  In other words, after over a year of not charging consumers for automatically renewing

accounts, ClassPass gave consumers 6 days to make changes in a deceptive email that did not mention cancellation other than in passing.

48.     ClassPass's May 2021 "unpause" email was a material change to Plaintiff's subscription and violated the ARL.  BUS. & PROF. CODE § 17602(e).

### D. ClassPass's Numerous ARL Violations Injured Plaintiff

49.     Plaintiff was injured by ClassPass's ARL violations in its enrollment process email because had she known the truth of the ClassPass trial cancellation policy, namely, that she would lose her paid credits for canceling the trial before it became a full-fledged automatically renewing subscription, she would not have enrolled in the trial plan.

50.     Plaintiff was further injured by ClassPass's ARL violations in its email acknowledgement and cancellation process because had she known the truth of ClassPass's misleading and intentionally difficult cancellation process, she would not have enrolled in a ClassPass subscription.

51.     Plaintiff was further injured by ClassPass's ARL violations in its cancellation process because she tried to cancel her subscription but was unable, leading to additional unintended charges.

52.     Plaintiff was injured by Defendant's ARL violations in its "unpause" email because she was re-entered into an automatically renewing subscription without her knowledge or consent, and was charged over $1,000 before she realized that she was being charged by ClassPass each month.

53.     When Plaintiff contacted ClassPass customer service, she was given the runaround by various ClassPass employees and eventually was refused a refund for most of the unwanted and unauthorized charges.

54.     Plaintiff intends to purchase services in the future for herself and her family from online health and wellness companies, including ClassPass, as long as she can gain some confidence in ClassPass's representations about its services and automatic enrollment, renewal, and cancellation practices.  Moreover, ClassPass still has Plaintiff's payment information and could use it to process further unauthorized payments.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**                                    19

**CLASS ALLEGATIONS**

55.     As alleged throughout this Complaint, the Class claims all derive directly from a single course of conduct by ClassPass.  ClassPass has engaged in uniform and standardized conduct toward the Class and this case is about the responsibility of ClassPass, at law and in equity, for its knowledge and conduct in deceiving its customers.  Defendant's conduct did not meaningfully differ among individual Class Members in its degree of care or candor, its actions or inactions, or in its false and misleading statements or omissions.  The objective facts on these subjects are the same for all Class Members.

56.     Plaintiff sues on her own behalf and on behalf of a Class for monetary and equitable relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

57.     The Class is preliminarily defined as follows:

> All California consumers who have been charged by ClassPass for an auto-renewing subscription for any product or service in connection with a purchase made via the ClassPass website from January 30, 2019 to the date of judgment.

58.     Excluded from the Class are:  Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.  Also excluded are federal, state and local government entities; and any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff.

59.     Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class and/or add Subclasses, when Plaintiff files her motion for class certification.

60.     Plaintiff does not know the exact size of the Class since such information is in the exclusive control of ClassPass.  Plaintiff believes, however, that the Class encompasses at least tens of thousands of consumers whose identities can be readily ascertained from ClassPass records.

Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

61.     The Class is ascertainable because its members can be readily identified using data and information kept by ClassPass in the usual course of business and within its control.  Plaintiff anticipates providing appropriate notice to each Class Member in compliance with all applicable federal rules.

62.     Plaintiff is an adequate class representative.  Plaintiff's claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.  Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by ClassPass.  Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendant's conduct.

63.     Plaintiff will fairly and adequately protect the interests of all Class Members.  Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class.

64.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

      a.  whether Defendant's conduct violates the applicable California consumer protection statutes;

      b.  whether Class Members have been injured by Defendant's conduct;

      c.  whether, and to what extent, equitable relief should be imposed on ClassPass to prevent it from continuing its unlawful practices; and

      d.  the extent of class-wide injury and the measure of damages for those injuries.

65.     A class action is superior to all other available methods for resolving this controversy because (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests

of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendant's conduct; (3) ClassPass has acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

66.     Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

        a.  whether Defendant's conduct violates the applicable California consumer protection statutes;

        b.  whether Class Members have been injured by Defendant's conduct;

        c.  whether, and to what extent, equitable relief should be imposed on ClassPass to prevent it from continuing its unlawful practices; and

        d.  the extent of class-wide injury and the measure of damages for those injuries.

67.     Accordingly, this action satisfies the requirements set forth under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rule of Civil Procedure.

## CAUSES OF ACTION

## COUNT 1

## CALIFORNIA AUTOMATIC RENEWAL LAW

68.     Plaintiff incorporates by reference all preceding and subsequent paragraphs.

69.     Plaintiff brings this claim on her own behalf and on behalf of each Class member.

70.     The California Automatic Renewal Law, BUS. & PROF. CODE §§ 17600 *et seq.*, became effective on December 1, 2010.

71.     BUS. & PROF. CODE §§ 17600 *et seq.*, declares unlawful "the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers'

---

**FIRST AMENDED CLASS ACTION COMPLAINT**                                                22

explicit consent for ongoing shipments of a product or ongoing deliveries of service." To ensure that result, the law requires certain clear and conspicuous disclosures be made to any California consumer being offered a product or service which will automatically renew at some point in the future. ClassPass's conduct as alleged in this Complaint was unlawful because it failed to comply with the requirements of BUS. & PROF. CODE § 17602. ClassPass's failures to comply include at least the following independent violations:

a. ClassPass failed to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer, as required by BUS. & PROF. CODE § 17602(a)(1);

b. ClassPass charged Plaintiff's and the Class's credit or debit cards, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms, as required by BUS. & PROF. CODE § 17602(a)(2);

c. ClassPass failed to provide an acknowledgment that includes its cancellation policy and information regarding how to cancel as required by BUS. & PROF. CODE § 17602(a)(3);

d. ClassPass failed to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation," as required by BUS. & PROF. CODE § 17602(c);

e. ClassPass required consumers to engage in steps to cancel that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately, in violation of BUS. & PROF. CODE § 17602(d);

f. ClassPass failed to offer either of the cancellation methods required under BUS. & PROF. CODE § 17602(d)(1)(A)–(B);

g. ClassPass failed to provide clear and conspicuous notice of its material change to its existing automatic renewal or continuous service terms, as required by BUS. & PROF. CODE § 17602(e); and

h. To the extent ClassPass provided any notice of its material change to its existing automatic renewal or continuous service terms, ClassPass failed to provide information regarding how to cancel, as required by BUS. & PROF. CODE § 17602(e).

**FIRST AMENDED CLASS ACTION COMPLAINT**                                    23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

72.     Plaintiff and the Class are entitled to a declaration that ClassPass's conduct was and is unlawful in that it's ongoing practices fail to comply with the requirements of the Automatic Renewal Law.

## COUNT 2

### CALIFORNIA UNFAIR COMPETITION LAW–UNLAWFUL BUSINESS PRACTICES

73.     Plaintiff incorporates by reference all preceding and subsequent paragraphs.

74.     Plaintiff brings this claim on her own behalf and on behalf of the Class.

75.     BUS. & PROF. CODE § 17200 *et seq.* (the "Unfair Competition Law" or "UCL") prohibits acts of "unfair competition," including any unlawful, fraudulent or unfair business acts or practices as well as any acts contrary to the requirements of BUS. & PROF. CODE § 17500.

76.     Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.

77.     ClassPass committed unlawful business practices under the UCL because it imposed charges without complying with all applicable requirements of BUS. & PROF. CODE §§ 17600 *et seq.*, as alleged above.

78.     As a result of ClassPass's unlawful business practices, Plaintiff suffered an injury in fact and lost money or property.

79.     Pursuant to BUS. & PROF CODE §17203, Plaintiff and the Class are entitled to an order: (1) requiring ClassPass to make restitution to Plaintiff and the Class; (2) enjoining ClassPass from charging Plaintiff's and Class members' credit cards, debit cards, and/or third party payment accounts until such time as ClassPass obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms and meets all other legal requirements; and (3) enjoining ClassPass from making automatic renewal or continuous service offers in the State of California that do not comply with the California Automatic Renewal Law.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**                                          24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT 3**

**CALIFORNIA UNFAIR COMPETITION LAW–UNFAIR BUSINESS PRACTICES**

80.     Plaintiff incorporates by reference all preceding and subsequent paragraphs.

81.     Plaintiff brings this claim on her own behalf and on behalf of the Class.

82.     BUS. & PROF. CODE § § 17200 *et seq.* (the "Unfair Competition Law" or "UCL") prohibits acts of "unfair competition," including any unlawful, fraudulent or unfair business acts or practices as well as any acts contrary to the requirements of BUS. & PROF. Code § 17500.

83.     The courts have adopted differing tests for determining whether a business act or practice is "unfair" under the UCL.  ClassPass's practices as alleged above were and are "unfair" and therefore violative of the UCL, under any and all of these tests.  ClassPass's practices have resulted in substantial injury to consumers that was not outweighed by any countervailing benefits to consumers or to competition and was not reasonably avoidable by the consumers themselves. Alternatively, ClassPass's practices offended an established public policy and/or were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.   Alternatively, ClassPass's practices were contrary to a public policy "tethered" to a specific constitutional, statutory or regulatory provision.

84.     As a result of ClassPass's unlawful, unfair, and fraudulent business practices, Plaintiff suffered an injury in fact and lost money or property.

85.     Pursuant to BUS. & PROF CODE §17203, Plaintiff and the Class are entitled to an order: (1) requiring ClassPass to make restitution to Plaintiff and the Class; (2) enjoining ClassPass from charging Plaintiff's and Class members' credit cards, debit cards, and/or third party payment accounts until such time as ClassPass obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms and meets all other legal requirements; (3) enjoining ClassPass from making automatic renewal or continuous service offers in the State of California that do not comply with California Automatic Renewal Law; and (4) enjoining ClassPass from "unpausing" Class member's accounts and using their credit cards, debit cards, and/or third party payment accounts to process charges until such time

---

**FIRST AMENDED CLASS ACTION COMPLAINT**                                                    25

as ClassPass obtains the consumer's affirmative consent to such "unpausing" that contains clear and conspicuous disclosures of all material terms and meets all other legal requirements.

## COUNT 4

### CALIFORNIA UNFAIR COMPETITION LAW–FRAUDULENT PRACTICES AND FALSE ADVERTISING

86.     Plaintiff incorporates by reference all preceding and subsequent paragraphs.

87.     Plaintiff brings this claim on her own behalf and on behalf of the Class.

88.     BUS. & PROF. CODE §§ 17200, *et seq.* (the "Unfair Competition Law" or "UCL") prohibits acts of "unfair competition," including any unlawful, fraudulent or unfair business acts or practices as well as any acts contrary to the requirements of BUS. & PROF. CODE § 17500.

89.     ClassPass's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public, and thus constituted fraudulent business practices in violation of the UCL.  Moreover, those acts, omissions, nondisclosures, and misleading statements were contrary to the provisions of the False Advertising Law, BUS. & PROF. CODE § 17500 and constitute violations of the UCL for that reason as well.

90.     As a result of ClassPass's unlawful and unfair business practices, Plaintiff suffered an injury in fact and lost money or property.

91.     Pursuant to BUS. & PROF. CODE §17203, Plaintiff and the Class are entitled to an order: (1) requiring ClassPass to make restitution to Plaintiff and the Class; (2) enjoining ClassPass from charging Plaintiff's and Class members' credit cards, debit cards, and/or third party payment accounts until such time as Best Buy obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms and meets all other legal requirements; and (3) enjoining ClassPass from making automatic renewal or continuous service offers in the State of California that do not comply with California Automatic Renewal Law.

1

2

<u>**COUNT 5**</u>

**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**

3        92.        Plaintiff incorporates by reference all preceding and subsequent paragraphs.

4        93.        Plaintiff brings this claim on her own behalf and on behalf of the Class.

5        94.        The California Consumers Legal Remedies Act (the "CLRA"), CIV. CODE §

6    1770(a)(14), prohibits certain specified unlawful acts and practices if utilized in connection with any

7    transaction involving the sale or lease of goods or services to a consumer.

8        95.        ClassPass violated CIV. CODE § 1770, subdivisions (a)(5), (a)(9), (a)(14) and (a)(16)

9    by, inter alia, representing that ClassPass's goods and services have certain characteristics that they

10   do not have; advertising goods and services with the intent not to sell them as advertised; representing

11   that a transaction confers or involves rights, remedies, or obligations that it does not have or involve,

12   or that are prohibited by law; and representing that the subject of a transaction has been supplied in

13   accordance with a previous representation when it has not.

14       96.        Plaintiff and the Class members are "consumers" within the meaning of CIV. CODE §

15   1761(d) in that Plaintiff and the Class members were charged by ClassPass in connection with

16   transactions involving goods or services sought or acquired for personal, family, or household

17   purposes.

18       97.        ClassPass's auto-renewing subscriptions constitute "services" within the meaning of

19   CIV. CODE § 1761(b).  ClassPass platform enables consumers to reserve, schedule, purchase, access

20   and attend fitness and recreational classes offered and operated by fitness studios, gyms, trainers,

21   venues or other third parties.  ClassPass acknowledges in its Terms of Use that it provides "our

22   services" to consumers.  ClassPass's Terms of Use also repeatedly acknowledge that ClassPass

23   provides "services" directly to consumers.

24       98.        Plaintiff has standing to pursue these claims because she suffered injury in fact and a

25   loss of money and/or property as a result of the wrongful conduct alleged herein.

26

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**                                                      27

99.     The charges imposed by ClassPass, purportedly in exchange for auto-renewing subscriptions, to Plaintiff and Class Members are "transactions" within the meaning of CIV. CODE § 1761(e).

100.     As a direct and proximate result of result of ClassPass's violations of the CLRA, Plaintiff and the Class were wrongfully charged fees for ClassPass's auto-renewing subscriptions.

101.     ClassPass's conduct alleged herein was undertaken by knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of CAL. CIV. CODE § 3294(c).

102.     On January 30, February 10, and March 6, 2023, Plaintiff through counsel, sent a notice and demand letter by certified mail to ClassPass Inc., pursuant to Cal. Civ. Code § 1782. Copies of Plaintiff's March 6, 2023, demand letter to ClassPass Inc., which were sent both to ClassPass Inc.'s principal place of business in Montana and within California, are attached hereto as Exhibit A.  ClassPass Inc failed to comply with the letter within thirty (30) days.

103.     On March 6, 2023, Plaintiff through counsel, sent a notice and demand letter by certified mail to ClassPass USA LLC, pursuant to Cal. Civ. Code § 1782.  Copies of Plaintiff's March 6, 2023, demand letter to ClassPass USA LLC, which were sent both to ClassPass USA LLC's principal place of business in Montana and within California, are attached hereto as Exhibit B. ClassPass USA LLC failed to comply with the letter within thirty (30) days.

104.     On March 6, 2023, Plaintiff through counsel, sent a notice and demand letter by certified mail to ClassPass, LLC, pursuant to Cal. Civ. Code § 1782.  Copies of Plaintiff's March 6, 2023, demand letter to ClassPass, LLC, which were sent both to ClassPass, LLC's principal place of business in Montana and within California, are attached hereto as Exhibit C.  ClassPass, LLC failed to comply with the letter within thirty (30) days.

105.     Accordingly, Plaintiff and the Class Members seek an injunction prohibiting ClassPass from engaging in the unlawful practices alleged herein, as well as compensatory damages, punitive damages, and restitution of any ill-gotten gains due to ClassPass's acts and practices, and any other remedies the Court may deem appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)     Issue an order certifying the Class defined above, appointing Plaintiff as Class representative, and designating Bramson, Plutzik, Mahler & Birkhaeuser, LLP and Wittels McInturff Palikovic as Class Counsel;

(b)     Find that ClassPass has committed the violations of law alleged herein;

(c)     Enter an appropriate order awarding restitution and monetary damages to the Class;

(d)     Enter an order granting appropriate injunctive relief on behalf of the Class;

(e)     Award pre-judgment interest, costs, reasonable attorneys' fees and expenses; and

(f)     Grant all such other relief as the Court deems appropriate.

Dated:  April 7, 2023

**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**

By:    /s/ Alan R. Plutzik
Alan R. Plutzik (Bar No. 77785)
aplutzik@bramsonplutzik.com
Robert M. Bramson (Bar No. 102006)
rbramson@bramsonplutzik.com
Daniel E. Birkhaeuser (Bar No. 136646)
dbirkhaeuser@bramsonplutzik.com
2125 Oak Grove Road, Suite 125
Walnut Creek, California 94598
Telephone: (925) 945-0200


**WITTELS MCINTURFF PALIKOVIC**

By:   /s/ Ethan D. Roman
Ethan D. Roman*
edr@wittelslaw.com
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (917) 775-8862
Facsimile: (917) 775-8862

*Counsel for Plaintiff and the Proposed Class*

*\* Admitted pro hac vice*