MANATT, PHELPS & PHILLIPS, LLP
CHRISTINE M. REILLY (Bar No. 226388)
E-mail: CReilly@manatt.com
JUSTIN JONES RODRIGUEZ (Bar No. 279080)
E-mail: JJRodriguez@manatt.com
MADELAINE NEWCOMB (admitted *pro hac vice*)
E-mail: MNewcomb@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

Attorneys for Defendants
CLASSPASS INC., CLASSPASS, LLC, and
CLASSPASS USA LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| KATHERINE CHABOLLA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLASSPASS INC., CLASSPASS, LLC, and CLASSPASS USA LLC<br><br>Defendants. | No. 4:23-cv-00429-YGR<br><br>**DEFENDANTS' RENEWED NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS AND/OR STAY CASE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed Concurrently with:<br>   1.  [Proposed] Order;<br>   2.  Request for Judicial Notice;<br>   3.  Declaration of Nina Bayatti;<br>   4.  Declaration of Ingrid Chang;<br>   5.  Declaration of Kelsey Roggero;<br>   6.  Declaration of Siu Fung Wong;<br>   7.  Declaration of Jessica Van Meter;<br>   8.  Declaration of Madelaine Newcomb]<br><br>Date:     June 13, 2023<br>Time:    2:00 p.m.<br>Ctrm:   1, 4th Floor<br>Judge:  Yvonne Gonzales Rogers<br><br>Date Action Filed: January 30, 2023 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on June 13, 2023 at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers in Courtroom 1, 4th Floor of the United States District Court for the Northern District of California Oakland Division, located at 1301 Clay Street, Oakland, California 94612, Defendants ClassPass Inc., ClassPass, LLC and ClassPass USA LLC (collectively "ClassPass") will and does move this Court for an order (1) compelling arbitration of all claims alleged in Plaintiff Katherine Chabolla's ("Plaintiff") First Amended Complaint (Dkt. 19) on an individual basis under the Federal Arbitration Act, 9 U.S.C. section 1 *et seq.*; and (2) dismissing, or alternatively staying, this entire action in favor of arbitration. ClassPass also will and respectfully does move to stay all discovery and case deadlines pending resolution of this motion.

This motion is made on the grounds that Plaintiff entered into a valid and binding agreement to arbitrate all disputes with ClassPass, including those alleged in the First Amended Complaint, strictly on an individual basis.

This motion is based on this notice of motion, the memorandum of points and authorities, the concurrently filed declarations of Nina Bayatti, Ingrid Chang, Kelsey Roggero, Jessica Van Meter, Siu Fung Wong, and Madelaine Newcomb, all pleadings and records on file, those matters of which the Court may and properly does take judicial notice, and such argument and other evidence properly presented to the Court prior to or at the hearing.

Dated: April 21, 2023                    MANATT, PHELPS & PHILLIPS, LLP


By: /s/ Justin Jones Rodriguez
    Christine M. Reilly
    Justin Jones Rodriguez
    Attorneys for Defendants
    CLASSPASS INC., CLASSPASS, LLC,
    and CLASSPASS USA LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

MOTION TO COMPEL ARBITRATION
4:23-CV-00429-YGR

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION..................................................................................................... 1

II.   BACKGROUND...................................................................................................... 3

    A.    Plaintiff agreed to binding arbitration ............................................................ 3

    B.    Plaintiff agreed to arbitrate all disputes on an individual basis............................ 6

III.  INDIVIDUAL ARBITRATION SHOULD BE COMPELLED........................................ 7

    A.    The arbitration agreement delegates disputes regarding enforceability and scope to the arbitrator........................................................................................ 8

    B.    The arbitration agreement is valid and enforceable ........................................... 10

        1.    New York law applies ............................................................................. 10

        2.    The inquiry notice standard.................................................................... 11

        3.    ClassPass provided conspicuous notice of the terms ............................ 13

        4.    Plaintiff affirmatively assented to the Terms ........................................ 14

        5.    Plaintiff's claims fall within the scope of the arbitration agreement ........ 16

    C.    The arbitration should proceed on an individual basis......................................... 17

    D.    The Court should dismiss this action in favor of arbitration................................. 18

    E.    The Court should stay discovery and all case deadlines while considering this threshold Motion ...................................................................................... 18

IV.   CONCLUSION ....................................................................................................... 19

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

MOTION TO COMPEL ARBITRATION
4:23-CV-00429-YGR

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adibzadeh v. Best Buy, Co. Inc.*,
2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ................................................................. 9, 14

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
855 F.2d 1470 (9th Cir. 1988) ..................................................................................... 2

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) ..................................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................................... 17

*AT&T Techs., Inc. v. Comm. Workers of Am.*,
475 U.S. 643 (1986) ..................................................................................................... 2

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................................................................................... 12

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as
modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) .............................................. 16

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ..................................................................................... 9

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ..................................................................................................... 16

*Carrera Chappel v. Ancestry.com Operations Inc.*,
2020 WL 5847552 (S.D. Cal. Sept. 30, 2020) ........................................................... 18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ............................................................................... 10, 16

*Christian v. Pressed Juicery, Inc.*,
2021 WL 4771801 (C.D. Cal. Apr. 23, 2021) ........................................................... 12

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ....................................................................................................... 8

*Cooper v. Adobe Sys. Inc.*,
2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) ........................................................... 9

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ....................................................................... 16

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ..................................................................................................... 8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Digital Software Servs., Inc. v. Entm't Programs, Inc.*,
   2010 WL 727610 (E.D. Cal. Mar. 1, 2010) ................................................................. 17

*Feld v. Postmates, Inc.*,
    442 F. Supp. 3d 825 (S.D.N.Y. 2020) ...................................................................... 16

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) .............................................................................................. 10, 13

*Galen v. Redfin Corp.*,
   2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ................................................................. 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ................................................................................................... 8

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...................................................................... 15

*In re Ring LLC Priv. Litig.*,
   2021 WL 2621197 (C.D. Cal. June 24, 2021), *appeal dismissed*, 2022 WL 3339845
   (9th Cir. Aug. 3, 2022) ................................................................................................. 12

*Iqbal v. Ziadeh*,
   10 Cal. App. 5th 1 (2017) ............................................................................................. 12

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) ..................................................................................... 18

*La Force v. GoSmith, Inc.*,
   2017 WL 9938681 (N.D. Cal. Dec. 12, 2017) (Gonzalez Rogers, J.) ......................... 15

*Lee v. Ticketmaster L.L.C.*,
   2019 WL 9096442 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020) ........... 1

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ................................................................................. 15

*Loewen v. Lyft, Inc.*,
   129 F. Supp. 3d 945 (N.D. Cal. 2015) ........................................................................ 18

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
   2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) ............................................................. 18

*Marchand v. Northrop Grumman Corp.*,
   2017 WL 2633132 (N.D. Cal. June 19, 2017) ............................................................... 2

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ............................................................................... 12, 14, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) .................................................................................................... 7, 17

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

**TABLE OF AUTHORITIES**
(continued)

Page

*Nedlloyd Lines B.V. v. Superior Court,*
3 Cal. 4th 459 (1992)........................................................................... 10, 11

*New England Mech., Inc. v. Laborers Local Union 294,*
909 F.2d 1339 (9th Cir. 1990)................................................................ 10

*Nguyen v. Barnes & Noble Inc.,*
763 F.3d 1171 (9th Cir. 2014)................................................ 11, 12, 13, 15

*Oberstein v. Live Nation Entm't, Inc.,*
60 F. 4th 505 (9th Cir. 2023).........................................................passim

*Peni v. Daily Harvest, Inc.,*
2022 WL 16849451 (S.D.N.Y. Nov. 10, 2022)................... 12, 13, 14, 15

*Perry v. Thomas,*
482 U.S. 483 (1987).................................................................................. 8

*Peter v. DoorDash, Inc.,*
445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................... 14, 16, 19

*Peterson v. Lyft,*
2018 WL 6047085 (N.D. Cal. Nov. 19, 2018)....................................... 18

*Pizarro v. QuinStreet, Inc.,*
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022)....................................... 14

*Rent-A-Center, West, Inc. v. Jackson,*
561 U.S. 63 (2010)................................................................................ 8, 9

*Simula, Inc. v. Autoliv, Inc.,*
175 F.3d 716 (9th Cir. 1999)................................................................. 16

*Sparling v. Hoffman Const. Co.,*
864 F.2d 635 (9th Cir. 1988)................................................................. 18

*Starke v. SquareTrade, Inc.,*
913 F.3d 279 (2d Cir. 2019).................................................... 11, 12, 13

*Stiener v. Apple Computer, Inc.,*
2007 WL 4219388 (N.D. Cal. Nov. 29, 2007)....................................... 18

*Stolt-Nielsen v. Animalfeeds Int'l Corp.,*
559 U.S. 662 (2010)............................................................................... 17

*Tiri v. Lucky Chances, Inc.,*
226 Cal. App. 4th 231 (2014)................................................................. 9

*Vargas v. Delivery Outsourcing, LLC,*
2016 WL 946112 (N.D. Cal. Mar. 14, 2016).......................................... 9

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

Page

## STATUTES

9 U.SC. § 2 ...................................................................................................... 7

9 U.SC. § 3 ............................................................................................... 18, 19

California Automatic Renewal Law ......................................................... 2, 17

Consumers Legal Remedies Act ............................................................... 2, 17

Federal Arbitration Act ........................................................... 7, 8, 10, 16

Unfair Competition Law ............................................................................ 2, 17

## OTHER AUTHORITIES

www.classpass.com ............................................................................................ 3

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.  INTRODUCTION

This lawsuit belongs in arbitration. Plaintiff Katherine Chabolla voluntarily purchased a ClassPass[2] membership online and agreed to ClassPass' terms of use ("Terms"), including binding arbitration and class action waiver provisions. In fact, Plaintiff affirmatively assented to the Terms *three times* and on *three different screens* during her purchase—when she entered her email address to create her ClassPass account, when she entered her name on the following page, and when she completed her purchase.

In each instance, ClassPass conspicuously displayed a notice directly above or below an action button informing Plaintiff that by clicking the button, she was agreeing to ClassPass' **Terms of Use**. The Terms were hyperlinked in bright blue font, distinguishing them from the surrounding text. Had Plaintiff clicked on any one of the hyperlinks, the very top of the first page would have informed her—in all capital letters—that "THESE TERMS CONTAIN A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER THAT REQUIRE YOU TO ARBITRATE ALL DISPUTES YOU HAVE WITH CLASS PASS ON AN INDIVIDUAL BASIS." Under Ninth Circuit precedent, these facts create a binding arbitration and class action waiver contract as a matter of law. *See Oberstein v. Live Nation Entm't, Inc.*, 60 F. 4th 505, 512-17 (9th Cir. 2023) (enforcing arbitration where a conspicuous hyperlink was placed directly above or below a button at three stages of the purchase).

Plaintiff agreed to arbitration *three* times, but only one agreement is required to compel a party to arbitration. *See Lee v. Ticketmaster L.L.C.*, 2019 WL 9096442, at *1 n.1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020). Each of Plaintiff's three separate agreements is independently sufficient to grant the motion. And the fact that Plaintiff assented to the Terms

---

[1] ClassPass Inc. filed its first motion to compel arbitration (dkt. 18) on April 7, 2023 and noticed a hearing for May 30, 2023. Plaintiff then requested that ClassPass stipulate to an extended briefing schedule due to various conflicts. ClassPass agreed pending this Court's approval. Before the parties could prepare and file a stipulated request, Plaintiff amended the complaint to avoid her original opposition deadline and add two new ClassPass entities as defendants. Plaintiff has now summoned three entities to the wrong forum. This renewed motion is thus on behalf of all three ClassPass entities.

[2] "ClassPass" refers to Defendants ClassPass Inc., ClassPass, LLC, and ClassPass USA LLC.

multiple times only reinforces that she had multiple opportunities to review the Terms prior to completing her purchase.

The arbitration agreement covers every claim in this lawsuit. It expressly covers every claim and dispute that in any way relates to Plaintiff's relationship with ClassPass. *See* Declaration of Jessica Van Meter ("Van Meter Decl."), Ex. 1 at § 18(a) (defining "Dispute" as "any dispute, claim, or controversy between you and ClassPass regarding any aspect of your relationship with ClassPass"). Plaintiff alleges five claims under three California consumer protection statutes: the California Automatic Renewal Law ("ARL"), Unfair Competition Law ("UCL"), and Consumers Legal Remedies Act ("CLRA"). All five claims hinge on Plaintiff's allegations that ClassPass charged her, without consent, for an automatically renewing monthly ClassPass membership. *See* First Amended Complaint ("FAC") ¶¶ 68-105. Every claim in this lawsuit falls squarely within the arbitration provision.

This Court, however, need not reach the merits of Plaintiff's claims or even decide whether those claims are arbitrable. The arbitration provision clearly and unmistakably delegates those issues to the arbitrator. *See* Van Meter Decl., Ex. 1 at § 18(c) (arbitration provision covers disputes regarding the "validity, enforceability or scope of th[e] Arbitration Agreement"). The parties also expressly agreed that arbitration would be conducted under the AAA or JAMS Rules and would be administered by the AAA or JAMS, which serves as a separate, independent reason to delegate arbitrability issues to the arbitrator. *See id.* The motion should be granted, individual arbitration should be compelled, and the case should be dismissed or, alternatively, stayed pending arbitration.[3]

---

[3] In ruling on a motion to compel arbitration, the Court does not consider the merits. *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649-50 (1986) (once a court determines a claim is subject to arbitration, it lacks authority to address the merits of that claim). Nevertheless, the operative complaint lacks merit for multiple reasons, which ClassPass will present to the arbitrator. This motion satisfies ClassPass' obligation to respond to the complaint. *See Marchand v. Northrop Grumman Corp.*, 2017 WL 2633132, at *6 (N.D. Cal. June 19, 2017) (the time to answer had not elapsed in light of defendant's motion to compel arbitration); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988).

## II. BACKGROUND

### A. Plaintiff agreed to binding arbitration.

On January 30, 2020, Plaintiff purchased a monthly ClassPass membership on www.classpass.com. Declaration of Nina Bayatti ("Bayatti Decl.") ¶ 5; Declaration of Siu Fung Wong ("Wong Decl.") ¶ 5. The website conspicuously informed Plaintiff that she was receiving a $40 discount on her first month for a total purchase price of $35 plus tax. Bayatti Decl. ¶ 7, Ex. 2. The website also informed Plaintiff that after the first month, her membership would automatically renew at the monthly rate of $75. *Id.*



Prior to completing her purchase, Plaintiff assented to ClassPass' Terms at no fewer than three independent stages, including when she created her ClassPass account and placed her order.

First, to create her account, Plaintiff entered her email address and clicked a "Continue" or "Sign up with Facebook" button. *Id.* ¶ 8. As displayed below, the text immediately below the buttons stated: "By clicking 'Sign up with Facebook' or 'Continue,' I agree to the **Terms of Use** and **Privacy Policy**. *Id.*, ¶ 9 & Ex. 2.

Second, on the next screen, Plaintiff entered her first and last name and clicked a "Continue" button. *Id.* ¶ 10 & Ex. 3. As displayed below, the text immediately above the "Continue" button stated: "By signing up you agree to our **Terms of Use** and **Privacy Policy**. *Id.*



Third, to complete her purchase, Plaintiff was required to enter her billing information and affirmatively click a "Redeem Now" button. *Id.* ¶ 11 & Ex. 4. As displayed below, the text immediately above the button stated: "I agree to the **Terms of Use** and **Privacy Policy**." *Id.*



At each of the three stages, the words "**Terms of Use**" appeared in bold, contrasting blue font, signifying a hyperlink to the then-current version of the Terms. *Id.* ¶¶ 8-11 & Exs. 2-4. The three hyperlinks provided Plaintiff with full access to the complete Terms, including the mandatory arbitration and class action waiver provisions. *Id.* ¶¶ 9-11.

After enrolling, Plaintiff was presented with a series of onboarding questions designed to gauge her fitness level, preferred work out times, the types classes that best fit her personal interests, and her preferred location for classes. Wong Decl. ¶ 6, Ex. 1. These questions, like the

1    very nature of a ClassPass membership and the entire customer experience, demonstrate the type

2    of ongoing relationship that Plaintiff knowingly entered with ClassPass.

3         Plaintiff subsequently used her ClassPass membership to reserve a spot in five classes in

4    February 2020. Declaration of Kelsey Roggero ("Roggero Decl.") ¶ 6 & Ex. 1.

5         In March 2020, California—like much of the world—effectively shut down to address the

6    pandemic and slowdown the spread of COVID-19. That same month, ClassPass elected to pause

7    member subscriptions so that members would not have to pay for the service during the

8    shutdown. In March 2020, ClassPass sent an email to all ClassPass members informing them that

9    ClassPass would pause all accounts in light of the COVID-19 pandemic. Declaration of Ingrid

10   Chang ("Chang Decl.") ¶ 4; FAC ¶ 39.

11        By May 2021, gyms were reopening. On May 13, 2021, ClassPass sent an email to

12   Plaintiff informing her that her account would be un-paused and payments would resume on May

13   20, 2021. Chang Decl. ¶ 5 & Ex. 1; FAC ¶ 41. Plaintiff opened that email on multiple occasions,

14   including on May 13, 14 and 16, 2021. Chang Decl. ¶¶ 5-6. On May 13, Plaintiff even clicked on

15   a hyperlink in the email. *Id*. Despite receiving and opening these emails, Plaintiff did not cancel

16   her account.

17        On October 8, 2022, Plaintiff contacted ClassPass, claimed that she had not received

18   notice that her membership would be un-paused, and requested a refund of all charges since July

19   2020. Roggero Decl. ¶ 7 & Ex. 2. ClassPass responded that same day, informed Plaintiff that it

20   had in fact sent her an email notice that her account would be un-paused, immediately canceled

21   her membership, and issued a refund of $356 covering four months of unused membership from

22   July 2022 through October 2022. *Id*. Plaintiff then requested a refund for all charges dating back

23   to May 2021. *Id*. ClassPass reminded Plaintiff that under their Terms of Use, monthly

24   membership charges are non-refundable, but ClassPass had made an exception for the earlier

25   refund. *Id*. In response, Plaintiff acknowledged the Terms of Use but requested a refund "on the

26   grounds that Classpass [sic] didn't do the bare minimum to notify customers" that their account

27   would be un-paused. *Id*. Despite Plaintiff's initial claim that she never saw an email informing her

28   that her account would be un-paused, ClassPass' records indicate that Plaintiff opened the May

13, 2021 un-pause email several more times, including on October 8 and 9, 2022 and again on November 13, 2022. Chang Decl. ¶ 6. Plaintiff even attached the email to her Complaint (and First Amended Complaint), thus confirming her receipt of the email. *See* FAC ¶ 41.

**B.      Plaintiff agreed to arbitrate all disputes on an individual basis.**

The ClassPass Terms that Plaintiff repeatedly agreed to contain a binding arbitration agreement and class action waiver. The second paragraph on the first page of the Terms states in capitalized text:

> THESE TERMS CONTAIN A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER THAT REQUIRE YOU TO ARBITRATE ALL DISPUTES YOU HAVE WITH CLASS PASS ON AN INDIVIDUAL BASIS. PLEASE SEE SECTION 18 FOR MORE INFORMATION ABOUT THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER. YOU EXPRESSLY AGREE THAT DISPUTES BETWEEN YOU AND CLASSPASS WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION, AND YOU HEREBY WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS WIDE ARBITRATION.

Declaration of Jessica Van Meter ("Van Meter Decl."), Ex. 1 at 1.

The Terms also contain the bold capitalized heading "**Arbitration Agreement PLEASE READ THE FOLLOWING CAREFULLY:**" immediately above a broad arbitration provision covering "any dispute, claim, or controversy between you and ClassPass regarding any aspect of your relationship with ClassPass." *Id*. at § 18.

The arbitration provision states:

> The term "Dispute" means any dispute, claim, or controversy between you and ClassPass regarding any aspect of your relationship with ClassPass, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, gross negligence or reckless behavior), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Agreement (with the exception of the enforceability of the Class Action Waiver clause below). "Dispute" is to be given the broadest possible meaning that will be enforced.
>
> WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL DISPUTES, AS DEFINED ABOVE, WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE, WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT IN ACCORDANCE

WITH THIS ARBITRATION AGREEMENT.

*Id.* at § 18(a) (emphasis original).

Section 18(c) states: "The arbitration shall be commenced as an individual arbitration, and shall in no event be commenced as a class arbitration. All issues shall be for the arbitrator to decide, including the scope of this Arbitration Agreement." *Id.* at § 18(c).

The provision also includes a bold heading "**Class Action Waiver**," stating:

> Any Disputes arising out of or relating to your use of the Site and/or attendance at, participation in or use of Classes, any purchase you make on or through the Site, any information you provide via the Site, and/or these Terms (including the formation, performance, or alleged breach), shall be submitted individually by you and will not be subject to any class action or representative status. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, representative action, consolidated action or private attorney general action). Neither you, nor any other Member of ClassPass and/or user of ClassPass services, can be a class representative, class member, or otherwise participate in a class, representative, consolidated or private attorney general proceeding with respect to the matters set forth in the first sentence of this paragraph. You agree that this Class Action Waiver is material and essential to the arbitration of any dispute between you and ClassPass and is non-severable from the Arbitration Agreement. If any portion of this Class Action Waiver is limited, voided, or cannot be enforced, then the Arbitration Agreement shall be null and void. You understand that by agreeing to this Class Action Waiver, you may only pursue Dispute against ClassPass in an individual capacity and not as a plaintiff or class member in any purported class action or representative proceeding.

*Id.* at § 18(g).

## III.    INDIVIDUAL ARBITRATION SHOULD BE COMPELLED

As a threshold matter, the Term's arbitration provision is subject to the Federal Arbitration Act ("FAA")[4], which promotes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, arbitration agreements must be enforced as written. 9 U.S.C. § 2 (arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be

---

[4] Van Meter Decl., Ex. 1 § 18(c) ("Because your contract with ClassPass, the Terms of Use, and this this Arbitration Agreement concern interstate commerce, the Federal Arbitration Act ('FAA') governs the arbitrability of all Disputes.").

1   valid, irrevocable, and enforceable, save upon such ground as exist in law or in equity for the

2   revocation of any contract")[5]; *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (arbitration agreements

3   within the FAA's must be rigorously enforced); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

4   213, 218 (1985) (the FAA "mandates that district courts *shall* direct the parties to proceed to

5   arbitration on issues as to which an arbitration agreement has been signed" (emphasis original)).

6         Against this backdrop of liberal enforcement, the Court should compel individual

7   arbitration for two independent reasons: (1) the arbitrator should determine arbitrability in the

8   first instance; and (2) even if the Court reaches the question of arbitrability, the claims at issue

9   fall within the scope of a valid, binding arbitration agreement and class action waiver.

10        **A.    The arbitration agreement delegates disputes regarding enforceability and
11              scope to the arbitrator.**

12        This Court should not reach the issue of arbitrability—*i.e.*, whether this case should be

13   arbitrated. Federal law permits parties to arbitrate the two threshold questions of arbitrability: (1)

14   whether the arbitration agreement is valid; and (2) whether the scope of the agreement covers the

15   claims at issue. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("Parties can

16   agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to

17   arbitrate or whether their agreement covers a particular controversy"; and courts must enforce

18   parties' "agreement to arbitrate threshold issues"). If the contract "clear[ly] and unmistakab[ly]"

19   delegates arbitrability to the arbitrator, *id.* at 80, "a court may not override the contract" and it

20   "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White

21   Sales, Inc.*, 139 S. Ct. 524, 529 (2019). As detailed below, the issue of arbitrability has clearly and

22   unmistakably been delegated to the arbitrator in this case.

23        A delegation clause is considered effective when it is clear and unmistakable and not

24   ───────────────

25   [5] The transaction at issue involved interstate commerce as required by the FAA. The FAA's term
     "involving commerce" is interpreted broadly. *See, e.g.*, *Allied-Bruce Terminix Cos., Inc. v.
26   Dobson*, 513 U.S. 265, 282 (1995) (interstate commerce requirement satisfied where the party
     seeking to compel arbitration is a "multi-state firm" that ships products from out of state);
27   *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (interstate commerce exists even when
     the individual transaction does not have a substantial effect on commerce); Van Meter Decl., Ex.
28   1 at § 18(c) (Terms of Use and arbitration agreement concern interstate commerce).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO COMPEL ARBITRATION
4:23-CV-00429-YGR

revokable. *See Galen v. Redfin Corp.*, 2015 WL 7734137, at *5 (N.D. Cal. Dec. 1, 2015) (citing *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014)); *Rent-A-Center*, 561 U.S. at 70 n.1). Where, as here, the arbitration agreement incorporates the AAA or JAMS arbitration rules, the "clear and unmistakable" test has been satisfied. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (internal quotations and alterations omitted)); *Cooper v. Adobe Sys. Inc.*, 2019 WL 5102609, at *4 (N.D. Cal. Oct. 11, 2019) (incorporation of JAMS rules clearly and unmistakably delegated arbitrability to the arbitrator); *Adibzadeh v. Best Buy, Co. Inc.*, 2021 WL 4440313, at *8 (N.D. Cal. Mar. 2, 2021) ("By incorporating the AAA rules into the My Best Buy® Terms, the parties clearly and unmistakably agreed to submit arbitrability issues to an arbitrator. Thus, the Court may not rule on arbitrability questions."); *Galen*, 2015 WL 7734137, at *6 ("The incorporation of professional arbitration rules that delegate the questions of arbitrability can constitute 'clear and unmistakable' evidence that the parties intended to delegate that question.").

Here, the Terms unambiguously delegate disputes regarding the "validity, enforceability or scope of th[e] Arbitration Agreement" to the arbitrator. *See* Van Meter Decl., Ex. 1 at § 18(c). The parties also expressly agreed that arbitration would be conducted under the AAA or JAMS Rules and would be administered by the AAA or JAMS. *See id.* (AAA's Commercial Arbitration Rules or JAMS Comprehensive Arbitration Rules & Procedures will apply). The AAA Rules state: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Declaration of Madelaine Newcomb ("Newcomb Decl."), Ex. 1 at 14.[6] The JAMS Rules similarly

---

[6] The Court may take judicial notice of the AAA and JAMS Rules. *See Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *2 (N.D. Cal. Mar. 14, 2016) ("Because AAA's arbitration rules can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, the Court will take judicial notice."); *Cooper*, 2019 WL 5102609, at *4 ("JAMS rules are a matter of public record and therefore subject to judicial notice."); *see also* Request for Judicial Notice.

state: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." *Id.*, Ex. 2 at 8. Whether AAA or JAMS, the parties "clearly and unmistakably" agreed to delegate the arbitrability question to the arbitrator. *See New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990) (where parties "clearly and unmistakably" delegate arbitrability, "courts will be divested of that authority" and an arbitrator will decide in the first instance whether the dispute is arbitrable). Nothing else is required for the Court to grant this motion and compel individual arbitration.

**B.     The arbitration agreement is valid and enforceable.**

There is no dispute that Plaintiff voluntarily enrolled in a ClassPass membership and completed the enrollment process. *See* FAC ¶¶ 16-17. In fact, Plaintiff admits that she would even like to use ClassPass in the future. *Id.* ¶ 54. Thus, there is also no dispute that a contract between Plaintiff and ClassPass was formed. Plaintiff acknowledged the ClassPass Terms in her communications with ClassPass and even clicked on the Terms hyperlink within one of the emails she received. Chang Decl. ¶ 6. The arbitration agreement in the Terms is a valid, enforceable contract. Even if the Court decides not to enforce the delegation provision as the Terms require, Plaintiff's claims must still be arbitrated on an individual basis.

**1.     New York law applies.**

The Terms contain a New York choice of law provision.[7] Van Meter Decl., Ex. 1 § 19. California courts apply a two-part test to determine whether a choice of law provision is enforceable. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992). First, the Court must determine whether there is a "substantial relationship" to New York or a "reasonable basis"

---

[7] Under the FAA, arbitration must be compelled where, as here: (1) a valid agreement to arbitrate exists; and (2) the claims at issue fall within the scope of the agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). While the FAA exclusively governs enforceability of arbitration agreements, state law governs the determination of whether valid agreements exist. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

MOTION TO COMPEL ARBITRATION
4:23-CV-00429-YGR

1   for choosing New York law. *Id*. at 466. If "either test is met, the court must next determine

2   whether the chosen state's law is contrary to a *fundamental* policy of California." *Id*. (emphasis

3   original). "If there is no such conflict, the court shall enforce the parties' choice of law." *Id*. If

4   there is a conflict, then the parties' choice of law will not be enforced only if "California has a

5   materially greater interest than the chosen state[.]" *Id*.

6         The first element is easily satisfied. Prior to its termination, ClassPass Inc. maintained its

7   principal place of business in the chosen state—New York. FAC ¶ 13. The "substantial

8   relationship" test is met. *See Nedlloyd*, 3 Cal. 4th at 467 (incorporation provided the required

9   "substantial relationship" to the chosen state).[8] As to the second element, no conflict exists

10  between New York and California law. *See Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175

11  (9th Cir. 2014) (applying New York law to determine validity of arbitration agreement because

12  "both California and New York law dictate[d] the same outcome"). Thus, the New York choice of

13  law provision should be enforced.

14          **2.     The inquiry notice standard**

15        New York courts apply general principles of state contract law to determine whether

16  parties have entered into a binding arbitration agreement. Under New York law, a contract is

17  formed when there is "a meeting of the minds and a manifestation of mutual assent." *Starke v.*

18  *SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). The second element—mutual assent—is

19  evaluated under the inquiry notice standard. *Nguyen*, 763 F.3d at 1177 (validity of an internet

20  agreement "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms

21  of the contract"). An agreement will be enforced where "(1) the website provides *reasonably*

22  *conspicuous notice of the terms* to which the consumer will be bound; and (2) *the consumer takes*

23  *some action*, such as clicking a button or checking a box, that unambiguously manifests his or her

24

25

26  [8] Plaintiff's decision to amend the complaint and add two new ClassPass defendants does not change the analysis. Although the new ClassPass defendants—ClassPass, LLC and ClassPass

27  USA LLC—are not New York companies, ClassPass Inc. was the entity that existed at the time Plaintiff enrolled, when ClassPass paused her membership during the pandemic, and when

28  ClassPass unpaused it in 2021. *See* FAC ¶ 13.

assent to those terms."[9] *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (emphasis added) (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) and *Nguyen*, 763 F.3d at 1173)).[10] Inquiry notice "depends on the design and content of the website and the agreement's webpage" and "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design . . ." *Nguyen*, 763 F.3d at 1176-77; *Starke*, 913 F.3d at 289.

Inquiry notice does not require Plaintiff's subjective knowledge of the Terms. Instead, inquiry notice is evaluated through the objective lens of a reasonably prudent consumer. *Peni v. Daily Harvest, Inc.*, 2022 WL 16849451, at *3 (S.D.N.Y. Nov. 10, 2022); *Christian v. Pressed Juicery, Inc.*, 2021 WL 4771801, at *3 (C.D. Cal. Apr. 23, 2021) (citing *Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 8 (2017)). Plaintiff had inquiry notice because ClasPass gave her an opportunity—indeed, multiple opportunities—to inquire about the Terms by clicking a hyperlink. *Peni*, 2022 WL 16849451, at *5 (the plaintiff was on inquiry notice of the arbitration provision and manifested her assent to the provision by registering for an account where terms were provided by hyperlink during account creation); *see also Oberstein*, 60 F. 4th at 516 (on near identical facts, reasoning that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink"); *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021), *appeal dismissed*, 2022 WL 3339845 (9th Cir. Aug. 3, 2022) (inquiry notice satisfied where a "user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately above or below a button that must be clicked to affirmatively acknowledge the terms, place an order, or register for an account" (collecting cases)).

As detailed below, ClassPass provided Plaintiff with inquiry notice of the Terms.

---

[9] Alternatively, a website operator can show that a consumer had actual knowledge of the agreement. *Berman*, 30 F.4th at 856.

[10] The webpages Plaintiff encountered in this case are factually distinguishable from those in *Berman* for several reasons, including because ClassPass explicitly advised Plaintiff on multiple occasions that the act of clicking the button would constitute assent to the Terms, the notices were plainly legible and easy to read, and the hyperlinks were in blue. *See Berman*, 30 F.4th at 856 (notice was "barely legible to the naked eye," hyperlink was underlined but not blue, and plaintiffs were not explicitly advised that the act of clicking the button would constitute assent to the terms). As discussed in Section III.B.3, *infra*, this case is analogous to the more recent *Oberstein* decision. *See, e.g., Oberstein*, 60 F. 4th at 516.

3.      **ClassPass provided conspicuous notice of the terms.**

Plaintiff had at least three opportunities to review the Terms prior to completing her purchase. All three of ClassPass' notices to Plaintiff were reasonably conspicuous. *See Nguyen*, 763 F.3d at 1176-77 (inquiry notice "depends on the design and content of the website and the agreement's webpage" and "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design"); *Starke*, 913 F.3d at 289 (New York courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms").

The notices stated:

- On the account creation page: "By clicking 'Sign up with Facebook' or 'Continue,' I agree to the **Terms of Use** and **Privacy Policy**."

- On the page immediately after account creation: "By signing up you agree to our **Terms of Use** and **Privacy Policy**."

- On the checkout page: "I agree to the **Terms of Use** and **Privacy Policy**."

All three notices were conspicuous and satisfy the inquiry notice standard for at least five reasons.

First, the notices were located directly above or below and in direct visual proximity to the action buttons that Plaintiff affirmatively clicked. No reasonably prudent consumer could have missed them. *See Peni*, 2022 WL 16849451, at *4 (inquiry notice satisfied where "the warning text, including the hyperlinks to the relevant terms, appear[ed] directly below the button used to register with Daily Harvest and [wa]s therefore spatially coupled with the button"); *see also Oberstein*, 60 F.4th at 516 (notice was "conspicuously displayed directly above or below the action button at each of three independent stages that a user must complete before purchasing tickets").

Second, the text of the notice was easy to read. It was black against a white background and in roughly the same size font as the other text on the page. *See Peni*, 2022 WL 16849451, at *4; *Oberstein*, 60 F.4th at 516.

Manatt, Phelps & Phillips, LLP
Attorneys at Law
Los Angeles

<u>Third</u>, the hyperlink to the Terms was in blue, contrasting font color, making it clearly visible and easy to read. Courts consistently enforce arbitration agreements that can be viewed by clicking on a blue hyperlink. *See Oberstein*, 60 F.4th at 516 (website provided reasonably conspicuous notice where hyperlink was "written in bright blue font, distinguishing it from the surrounding text"); *Meyer*, 868 F.3d at 78 (website provided reasonably conspicuous notice of the terms of service "[a]lthough the sentence [wa]s in a small font" where "the dark print contrast[ed] with the bright white background, and the hyperlinks are in blue and underlined").

<u>Fourth</u>, all three webpages were uncluttered and straightforward. The notices were also set off by ample white space. The only way for Plaintiff to have missed the agreement to Terms was for her to knowingly ignore the text immediately above or below the action buttons at multiple independent stages. *See Peni*, 2022 WL 16849451, at *4-5; *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (compelling arbitration where the textual notice was directly below a submit button, set off by ample white space, and surrounded primarily by text no larger than the notice itself on a "relatively uncluttered" webpage).

<u>Fifth</u>, the notices are each made more conspicuous by ClassPass' practice of providing multiple notices throughout the purchase process. The design and context of the website accustoms users to seeing an agreement to Terms on multiple pages so that they are more likely to notice and view the Terms. No reasonable consumer could have missed the Terms on any of ClassPass' three notices, let alone on all three occasions. *See Oberstein*, 60 F.4th at 518 (courts have relied upon the repetition of notices in finding constructive notice); *see also Adibzadeh v. Best Buy, Co. Inc.*, 2021 WL 4440313, at *7 (N.D. Cal. Mar. 2, 2021) (compelling arbitration where plaintiff had the opportunity to click on and review the terms on three separate occasions); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) (sign-in page included two hyperlinks to terms and conditions).

On these facts, ClassPass provided the required notice to Plaintiff, the contract is valid, and the Court should enforce it.

### 4.    Plaintiff affirmatively assented to the Terms.

Plaintiff took affirmative action that unambiguously manifested her assent to the Terms

three times. As detailed above, the notices made the import of each action button clear to Plaintiff, and Plaintiff responded by clicking each button. *See Peni*, 2022 WL 16849451, at *5 (arbitration compelled where website made clear the significance of clicking action button). At account creation, ClassPass expressly informed Plaintiff that by clicking the "Continue" button and signing up for ClassPass, she was agreeing to the Terms. Bayatti Decl. ¶¶ 7-9 & Ex. 2.[11] She then clicked "Continue." *Id.* On the next page of the enrollment process, ClassPass expressly informed Plaintiff that "[b]y signing up" she was agreeing to the Terms. *Id.* ¶ 10. Plaintiff then continued the sign-up process by clicking "Continue" a second time. *Id.* ¶ 10 & Ex. 3. Finally, on the checkout page, ClassPass reiterated that Plaintiff was agreeing to its Terms. *Id.* ¶ 11. Plaintiff then completed her purchase by clicking a "Redeem Now" button. *Id.* ¶ 11 & Ex. 4.

A reasonably prudent consumer would have known that by clicking each button, creating an account, and completing her purchase, she had manifested assent to the Terms. *See Peni*, 2022 WL 16849451, at *5; *Oberstein*, 60 F.4th at 517 (plaintiff assented to terms by creating an account, signing into the account, and purchasing tickets); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (plaintiff "validly assented to Ticketmaster's Terms of Use . . . each time he clicked the 'Place Order' button when placing an order for tickets, where directly above the button, the website displayed the phrase, 'By clicking 'Place Order,' you agree to our Terms of Use"). "[T]hat is all that is required" to form a valid agreement. *Oberstein*, 60 F.4th at 517.

Courts applying New York (and California) law routinely compel arbitration under circumstances nearly identical to those described above. *See, e.g.*, *Peni*, 2022 WL 16849451, at

---

[11] Courts require less conspicuousness when a consumer manifests assent by an affirmative action (*e.g.*, a clickwrap agreement) than when assent is by mere use of the website (*e.g.*, a browsewrap agreement). *See Nguyen*, 763 F.3d at 1178, n.1 ("where courts have relied on the proximity of the hyperlink to enforce a browsewrap agreement, the websites at issue have included something more to capture the user's attention and secure her assent" such as an "activation button users had to click on"); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) ("Although there is no per se rule of validity or invalidity on either end, our Circuit has recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable."); *La Force v. GoSmith, Inc.*, 2017 WL 9938681, at *3 (N.D. Cal. Dec. 12, 2017) (Gonzalez Rogers, J.) ("Courts enforce clickwrap-type agreements where the user indicates actual notice of the terms of use, or where the user was required to acknowledge the terms of use before proceeding with further use of the site.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO COMPEL ARBITRATION
4:23-CV-00429-YGR

*4-5; *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020) ("Postmates' website and App sign-up screens put users on notice that by signing up for its service, they were agreeing to Postmates' [Terms of Service] and Privacy Policy."); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (notice appearing directly below the "Submit Order" button and providing a hyperlink to the terms of use was reasonably conspicuous); *Meyer*, 868 F.3d at 75-76 (enforcing arbitration agreement where "the user must click a button marked 'Register,' underneath which the screen states 'By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY,' with hyperlinks to" those documents) (applying California law but noting New York law was essentially the same).[12]

**5.      Plaintiff's claims fall within the scope of the arbitration agreement.**

In addition to determining whether an agreement to arbitrate exists, the FAA considers whether "the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. ClassPass' arbitration agreement broadly covers "any dispute, claim, or controversy between you and ClassPass regarding any aspect of your relationship with ClassPass." Van Meter Decl., Ex. 1 § 18(a). Agreements to arbitrate "any dispute"—like the agreement at issue here—are "broad and far reaching," *Chiron,* 207 F.3d at 1131, and require arbitration of all disputes that "touch matters covered by the contract containing the arbitration clause." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442 (2006) (analyzing similar language and finding that any challenge to the validity of the contract as a whole, and not specifically the arbitration provision, should be considered by an arbitrator). In other words, "when parties include a broad arbitration provision, *every dispute* between the

---

[12] California courts are in accord. *See, e.g., Oberstein*, 60 F.4th at 516-17; *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (user assented to terms when he created an account on the Uber app by clicking "DONE" above the disclaimer: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy"); *DoorDash, Inc.*, 445 F. Supp. 3d at 582 (plaintiffs were on inquiry notice of DoorDash's terms and conditions where "[t]o complete the process and place an order, [the user] clicked a 'Sign Up' button . . . [and] [d]irectly below that button was a statement reading: 'By tapping Sign Up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement'").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

MOTION TO COMPEL ARBITRATION
4:23-CV-00429-YGR

1    parties having a significant relationship to the contract and all disputes having their origin or

2    genesis in the contract should be sent to arbitration." *Digital Software Servs., Inc. v. Entm't*

3    *Programs, Inc.*, 2010 WL 727610, at \*3 (E.D. Cal. Mar. 1, 2010) (internal quotations and

4    citations omitted; emphasis added). To the extent any ambiguity exists, "[a]ny doubts concerning

5    the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l*

6    *Hosp.*, 460 U.S. at 24-25.

7        Plaintiff's claims clearly fall under ClassPass' arbitration provision, which as noted,

8    broadly covers any dispute, claim, or controversy between Plaintiff and ClassPass regarding any

9    aspect of Plaintiff's relationship with ClassPass. Plaintiff admits that she signed up for a

10   ClassPass membership. FAC ¶¶ 16-17. Plaintiff alleges claims under California's ARL (*id.* ¶¶ 68-

11   72), UCL (*id.* ¶¶ 73-91), and CLRA (*id.* ¶¶ 92-105) in connection with her ClassPass

12   membership. Because this case concerns Plaintiff's relationship with ClassPass and her ClassPass

13   membership, her claims are clearly covered by the arbitration agreement.

14       **C.**    **The arbitration should proceed on an individual basis.**

15       Although Plaintiff alleges class claims, Plaintiff agreed not to participate in a class action.

16   The arbitration agreement and class action waiver makes clear that Plaintiff agreed to waive her

17   right to pursue disputes on a consolidated or classwide basis and that "[she] underst[oo]d that by

18   agreeing to this Class Action Waiver, [she] may only pursue Disputes against ClassPass in an

19   individual capacity and not as a plaintiff or class member in any purported class action or

20   representative proceeding." Van Meter Decl., Ex. 1 at § 18(g).

21       Class action waivers, including class arbitration waivers, are valid and enforceable. *AT&T*

22   *Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), ("Requiring the availability of classwide

23   arbitration" in the face of an express disclaimer against class arbitration "interferes" with the

24   FAA's "principal purpose," which is to "ensure that private arbitration agreements are enforced

25   according to their terms"). "[C]ourts and arbitrators must give effect to the contractual rights and

26   expectations of the parties." *Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)

27   (internal quotation marks omitted). Because Plaintiff entered a binding agreement not to

28   participate in a class action, individual arbitration should be ordered.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

MOTION TO COMPEL ARBITRATION
4:23-CV-00429-YGR

1

**D.     The Court should dismiss this action in favor of arbitration.**

2        Finally, this Court should dismiss this entire case in favor of arbitration. Dismissal is

3    proper where, as here, "the court determines that all of the claims raised in the action are subject

4    to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014).

5    The Court should dismiss the action in its entirety because the arbitration agreements clearly

6    encompass the claims alleged in Plaintiff's First Amended Complaint.[13]

7        This case should also be dismissed because the arbitration agreement is enforceable and

8    plaintiff's claims are subject to arbitration on an individual basis. Courts in the Ninth Circuit have

9    dismissed, rather than stayed, cases on similar facts. *See, e.g.*, *Peterson v. Lyft*, 2018 WL

10   6047085, at *6 (N.D. Cal. Nov. 19, 2018) (granting motion to compel arbitration and dismissing

11   case); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015) (same); *Carrera Chappel*

12   *v. Ancestry.com Operations Inc.*, 2020 WL 5847552, at *1 (S.D. Cal. Sept. 30, 2020) (same).

13

**E.     The Court should stay discovery and all case deadlines while considering this
        threshold Motion.**

14

15       Federal courts in the Ninth Circuit and elsewhere routinely stay discovery and other

16   scheduling deadlines in cases where, as here, there is a motion to compel arbitration pending.

17   *See, e.g.*, *Stiener v. Apple Computer, Inc.*, 2007 WL 4219388, at *1-2 (N.D. Cal. Nov. 29, 2007)

18   (granting motion to stay obligations under the court's scheduling order pending resolution of

19   defendant's motion to compel arbitration because, if the motion is granted, the case will proceed

20   to arbitration and "responsibility for the conduct of discovery [will] lie[] with the arbitrators," and

21   noting that granting short stays of initial scheduling obligations and discovery are a "common

22   practice" among federal courts (citing various cases)); *Mahamedi IP Law, LLP v. Paradice & Li,*

23   *LLP,* 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (ruling similarly) (collecting cases)). This

24   Court should also stay discovery and any case deadlines during the pendency of this motion for

25   the sake of judicial and party economy.

26

---

[13] The provision for a stay in 9 U.S.C. § 3 does not prevent a court from acting in its discretion to
27   dismiss all claims entirely. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)
     (dismissing where "plaintiffs could not possibly win relief" because all claims were subject to
28   arbitration and section 3 of the FAA does "not limit the court's authority to grant a dismissal").

1    **IV.    CONCLUSION**

2            ClassPass respectfully requests that this Court issue an order enforcing the parties'

3    arbitration agreement, dismissing this case, and compelling individual arbitration of Plaintiff's

4    claims.[14]

5

6    Dated: April 21, 2023                          MANATT, PHELPS & PHILLIPS, LLP

7

8                                                   By: /s/Justin Jones Rodriguez

9                                                       Christine M. Reilly
                                                        Justin Jones Rodriguez
10                                                      Attorneys for Defendants
                                                        CLASSPASS INC., CLASSPASS, LLC,
11                                                      and CLASSPASS USA LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

      [14] If the Court is not inclined to dismiss, ClassPass respectfully requests, in the alternative, that
28    this matter be stayed in accordance with Section 3 of the FAA. *See DoorDash, Inc.*, 445 F. Supp.
      3d at 583 (citing 9 U.S.C. § 3).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -                                   MOTION TO COMPEL ARBITRATION
                                                 4:23-CV-00429-YGR